BEDELL, survivor, *v.* RICHMOND & DANVILLE R. R. Co.

1. The declaration alleging a contract for the transportation of cotton by the defendant from Columbus, Georgia, to Liverpool, England, and setting forth no consideration except an agreed rate of freight per hundred pounds, and the evidence showing that the actual shipment of the cotton from Columbus was made upon a bill of lading which the defendant by its agent, another railroad company which it designated to receive the cotton for it, delivered to the plaintiffs at the time of receiving the cotton for shipment, which bill of lading they accepted and used by attaching the same to a draft drawn by them upon other parties for money, this bill of lading, and not prior stipulations, must be regarded as embracing the final contract on which the plaintiffs, as well as the defend-

ant, acted touching the business of transporting the cotton ; and it not being produced nor its contents proved, the plaintiffs could not recover for an alleged breach of the contract of transportation by failure of the defendant's steamship to sail with the cotton on board from an American port on a particular day.

2. As the declaration alleged no solicitation by which plaintiffs were induced to purchase and ship, but declared upon the contract of transportation only, the court did not err in excluding evidence of conversations and stipulations, some of which occurred prior to the purchase of the cotton by the plaintiffs, and all prior to the execution and acceptance of the bill of lading.

3. Irrespective of other questions in the case, the failure of the plaintiffs to prove the contract declared upon by legal evidence rendered the judgment of nonsuit not only proper but necessary.

April 9, 1894.　Argued at the last term.

Action for damages.　Before Judge Butt.　Muscogee superior court.　May term, 1893.

L. F. Garrard and T. Y. Crawford, for plaintiff.

Peabody, Brannon, Hatcher & Martin, for defendant.

Lumpkin, Justice.

This case was before this court at the October term, 1891.　It was then held that as the declaration alleged that the defendant, a common carrier, contracted with the plaintiffs that a consignment of cotton would be carried out of a certain port on a certain day, and that the vessel did not, in fact, leave until a subsequent day, whereby the plaintiffs were damaged, a cause of action was set forth.　88 *Ga.* 591.　The case again came on for trial in the superior court at the May term, 1893, and having resulted in a nonsuit, was once more brought to this court.　After it reached here, the death of Bowers was suggested, and an order was taken allowing the case to proceed in the name of Bedell as survivor.

1. It was settled by the decision of this court when the case was here the first time, that, if the plaintiffs made out by proof the allegations of their declaration, they would be entitled to a recovery.　In view of our conclusion that the judgment awarding a nonsuit was

proper, it becomes important to carefully observe precisely what the plaintiffs alleged and what they proved.

The declaration states that on the 16th day of September, 1889, the Richmond & Danville Railroad Company " agreed to transport one thousand bales of cotton from Columbus, Ga., to Liverpool, England, over their line of railroad and steamer Empire, agreeing, by the terms of said contract, that the steamer Empire would sail from West Point, Virginia, on the 5th day of October, 1889, at an agreed rate of one dollar and ten cents a hundred pounds as the rate of transportation from the city of Columbus to Liverpool, England; . . . that in accordance with said contract, they delivered to said defendants one thousand bales of cotton to be transported over defendants' line of road and said steamer Empire, sailing as aforesaid to Liverpool," but "that said vessel did not leave West Point, Virginia, on Oct. 5th, 1889, with said cotton on board, until the 12th day of October, 1889, a period of seven days delay, and arrived in Liverpool seven days later than it should have arrived had it sailed from West Point on the 5th day of October." The declaration further alleged that the plaintiffs were damaged " by reason of said defendants' failure to carry out their contract as aforesaid," specifying how the damage was occasioned, the particulars as to which, in the view we take of the case, are not now material. It will be noticed that no consideration for the defendant's undertaking is set forth, except an agreed rate of freight per hundred pounds.

The evidence shows that the agent of the defendant directed the plaintiffs to deliver the cotton to the Georgia Midland Railroad Company, which they did, receiving at the same time from this company a bill of lading, which they accepted and used by attaching the same to a draft drawn by them on Orr & Hunter, for whom the cotton had been purchased. This conduct on

the part of the plaintiffs certainly amounted to a clear and unequivocal recognition by them of the bill of lading as the contract under which the cotton was actually shipped from Columbus, and therefore we think it must be regarded as embracing the final contract on which both the plaintiffs and the defendant acted touching the business of transporting this cotton. This bill of lading was not produced nor offered in evidence, nor were its contents proved. Therefore the plaintiffs entirely failed to show what was the real contract under which the cotton was shipped. In order to prove the breach of a contract, it is absolutely essential to show first what the contract was. As the plaintiffs failed to do this, they could not show that the contract, whatever it was, was broken by the failure of the defendant to have the steamer Empire sail from West Point, Va., on October 5th, 1889, with the cotton on board. Without having this bill of lading before us, we are unable to say that, by the terms of the contract between the plaintiffs and the defendant, it was stipulated that the steamer should sail on that particular day. It is true, as stated, the declaration does allege that such was the contract, and sets forth the facts constituting a breach of the same; but the plaintiffs were not entitled to recover for this alleged breach, for the simplest and best of all reasons— they did not prove it.

2. The plaintiffs insisted upon a right to recover because, as they contended, they were induced to purchase and ship the cotton at the solicitation of one Haile, representing the defendant as soliciting freight agent, and upon the faith of a contract made by him in the defendant's behalf, to the effect that the steamer should positively sail on the 5th day of October, 1889. In support of this contention, they offered in evidence a letter addressed to them by Haile, of which, omitting the heading, the following is a copy:

"Columbus, Ga., Sept. 16, '89.
"Mess. Bedell & Bowers, City.
"— T. M.   Engagement No. 42.
"Dear Sirs: 1000 bales of cotton from Columbus, Ga., to Liverpool, England, Str. Empire sailing from West Point, Va., Oct. 5th, 1889; through rate ($1.10) One 10–100 dolls. per hundred pounds.
"We have this day made the above engagement for you, and same is confirmed.
"Respy., J. C. Haile, Sol. Agent."

This letter was rejected by the court. Plaintiffs also offered in evidence, for the purpose of proving the alleged contract, testimony as to various conversations and stipulations between themselves and Haile, some of which occurred prior to their purchase of the cotton, and all prior to the execution and acceptance by them of the bill of lading. This evidence was also rejected. We think the court was right in excluding both the letter and the other evidence offered. The declaration did not allege any solicitation on the part of Haile by which the plaintiffs were induced to purchase and ship the cotton, or that they in fact did purchase and ship the cotton because of such solicitation, or upon the faith of any representations or promises by Haile in this respect. The only contract declared upon was the contract of transportation already mentioned. The evidence rejected was, therefore, irrelevant; and besides, all the conversations and stipulations referred to were, so far as we are aware, merged into the final contract evidenced by the bill of lading.

3. Numerous questions were made by the bill of exceptions, to which no specific allusion has been made, because to do so is unnecessary. The plaintiffs failed to prove by legal evidence the contract declared upon, and therefore, it was not only right to grant a nonsuit, but this was the only proper disposition to be made of the case.    *Judgment affirmed.*